IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

Case No.

BRANDI MCKAY,

    Plaintiff,

vs.

MIAMI-DADE COUNTY, a Municipal Corporation,

    Defendant.

_____/

## COMPLAINT

The plaintiff, Brandi McKay, by her undersigned counsel, makes the following complaint against the defendant, Miami-Dade County:

### Jurisdiction and Venue

1. This is an action to redress violations of the Fair Labor Standards Act of 1938, as amended ("FLSA"), 29 U.S.C. § 201 *et seq*. This court has jurisdiction pursuant to 29 U.S.C. § 216(b) and 28 U.S.C. § 1331.

2. The claims asserted in this action arose within this district and the alleged statutory violations occurred in this district. Venue of this action is proper pursuant to 29 U.S.C. § 216(b) and 28 U.S.C. § 1391.

### Parties

3. Plaintiff Brandi McKay ("McKay") is and at all times relevant to this complaint was an adult resident of the State of Florida.

4. Defendant Miami-Dade County is a political subdivision of the State of Florida, organized under the laws of Florida and defined in chapter 7 of the Florida Statutes.

## General Allegations

5. The Miami-Dade County Medical Examiner Department is a department of Miami-Dade County.

6. The Forensic Imaging Bureau ("FIB") is a bureau of the Miami-Dade County Medical Examiner Department.

7. On or about April 15, 2019, the FIB admitted McKay into its Forensic Imaging Preceptorship Program ("FIPP").

8. McKay's exclusive purpose for participating in the FIPP was to attain an educational and training benefit while creating a portfolio that would assist her in finding future employment. She did not provide volunteer services to the FIB for a civic, charitable, or humanitarian purpose.

9. The FIPP purports to be an unpaid internship administered by the FIB that provides "both didactic and 'hands on' instruction" to students.

10. The FIPP purports to seek "highly self-motivated" students and, by disclaiming a "rigid structure," masquerades as an internship program that offers instruction during a relatively brief time while primarily using interns to provide technical services that would otherwise be provided by paid staff members, to the financial benefit of Miami-Dade County.

11. During the first three weeks of the program, McKay was given "workbook" assignments accompanied by occasional opportunities to ask questions of a supervisor. During the fourth week, she shadowed a supervisor.

12. From on or about May 13, 2019 to on about September 10, 2019, a majority of McKay's work hours were spent in the morgue photographing autopsies. She began her work at 6:45 a.m. and worked until the last autopsy was finished, including weekends.

13. During nearly all of her work hours in the morgue between May 13, 2019 and September 10, 2019, McKay worked alone or with another intern. McKay photographed hundreds of autopsies but received no training, instruction, or supervision during the time she worked alone or with another intern in the morgue.

14. McKay was required to work during hours when forensic photographers who were paid as county employees were off duty, including hours worked after the end of the regular workday and on weekends. She regularly replaced employees who would have been paid wages if McKay had not provided the same services without compensation.

15. The services that McKay provided while working in the morgue benefitted Miami-Dade County because McKay replaced or displaced paid forensic photographers, enabling Miami-Dade County to avoid paying wages to paid staff members or fees to temporary replacements for the services it received.

16. The services that McKay provided while working in the morgue gave no corresponding educational benefit to McKay because, having learned the technique, taking additional photographs without supervision or significant feedback did not, and was not meant to, advance McKay's professional training.

17. After May 13, 2019, McKay was given only brief and sporadic equipment training and educational assignments that she completed during work hours when she was not performing services in the morgue. The actual instruction

and training she received after May 13, 2019 constituted a small percentage of the hours she worked.

17. 18. During her "internship," McKay trained other interns at the request of Miami-Dade County. Training interns is not part of the program description.

19. McKay's typical work schedule consisted of 12 on-duty days followed by 2 off-duty days.

20. McKay typically worked 50 to 60 hours per week. Miami-Dane County maintains control of McKay's time records.

21. McKay's last day of work for Miami-Dade County was on or about September 10, 2019.

22. McKay was not compensated for any of the work she performed for Miami-Dade County.

23. Miami-Dade County has refused to provide Ms. McKay with copies of the photographs she took and has thus deprived her of the benefit of building a portfolio.

### **FLSA Applicability**

24. As a political subdivision of Florida, Miami-Dade County is a "public agency" as that term is defined in 29 U.S.C. § 203(x).

25. As a political subdivision of Florida, Miami-Dade County is an "enterprise" as that term is defined in 29 U.S.C. § 203(r)(2)(C).

26. As a political subdivision of Florida, Miami-Dade County is an "enterprise engaged in commerce" as that term is defined in 29 U.S.C. § 203(s)(1)(C).

27. At all times relevant to this complaint, Miami-Dade County was a public agency employer as the term "employer" is defined in 29 U.S.C. § 203(d).

28. At certain times relevant to this complaint as described above, Miami-Dade County suffered or permitted McKay to work as a forensic photographer for the benefit of Miami-Dade County and therefore employed McKay as the term "employed" is used in 29 U.S.C. § 203(g).

29. At certain times relevant to this complaint as described above, McKay was an employee of Miami-Dade County as the term "employee" is defined in 29 U.S.C. § 203(e)(2)(C).

### First Claim: FLSA Minimum Wage Violation

30. McKay realleges and incorporates paragraphs 1 to 29 of this complaint.

31. Miami-Dade County failed to pay McKay the minimum wage mandated by 29 U.S.C. § 206 for each hour she worked while employed by Miami-Dade County.

32. Pursuant to 29 U.S.C. § 216(b), McKay is entitled to recover her unpaid wages, including interest, and an additional equal amount as liquidated damages, in amounts to be proven at trial, as well as reasonable attorney's fees and costs.

### Second Claim: FLSA Overtime Violation

33. McKay realleges and incorporates paragraphs 1 to 29 of this complaint.

34. Miami-Dade County failed to pay McKay the overtime compensation mandated by 29 U.S.C. § 207 for each hour in excess of 40 per week she worked while employed by Miami-Dade County.

35. Pursuant to 29 U.S.C. § 216(b), McKay is entitled to recover her unpaid overtime compensation, including interest, and an additional equal amount as liquidated damages, in amounts to be proven at trial, as well as reasonable attorney's fees and costs.

**Demand for Relief**

WHEREFORE, Plaintiff requests judgment against Defendant for:

a. unpaid wages, including minimum wage and overtime compensation, in an amount to be proved at trial;

b. interest;

c. liquidated damages equal to the sum of the monetary losses and the interest requested above;

d. an award of reasonable attorney's fees and the costs of this action; and

e. such further relief as is just.

Dated: February 12, 2020   Respectfully submitted,
Plantation, Florida

*/s/Robert S. Norell*
Robert S. Norell, Esq.
Fla. Bar No. 996777
E-Mail: rob@floridawagelaw.com
**ROBERT S. NORELL, P.A.**
300 N.W. 70th Avenue
Suite 305
Plantation, FL 33317
Telephone: (954) 617-6017
Facsimile: (954) 617-6018
*Counsel for Plaintiff*