United States District Court
for the
Southern District of Florida

| | |
|---|---|
| Brandi McKay, Plaintiff, | ) |
| | ) |
| v. | ) Civil Action No. 20-20638-Civ-Scola |
| | ) |
| Miami-Dade County, Defendant. | ) |

### Order on Cross Motions for Summary Judgment

This matter is before the Court upon the respective cross motions for summary judgment of the Plaintiff, Brandi McKay, and the Defendant, Miami-Dade County. (ECF Nos. 31, 32.) For the reasons set forth below, the Court **denies** Ms. McKay's motion for summary judgment (**ECF No. 31**) and **grants** the County's motion for summary judgment (**ECF No. 32**).

I. **Background**

Miami-Dade County (the "County") is a political subdivision of the State of Florida. The County, through the Forensic Imaging Bureau of the Medical Examiner's Department administers a Medical Examiner's Forensic Imaging Preceptorship Program (the "Program"). (ECF Nos. 30, 38 at ¶1-2.) This free Program is well known, and many medical examiners contact the Program when they are hiring for open positions. (ECF Nos. 33, 35 at ¶3.)

The Plaintiff, Ms. McKay applied for the Program in 2016, and after being admitted, began her internship with the County on April 15, 2019. (ECF Nos. 30, 38 at ¶3.) She first learned of the Program while visiting Barry College to learn about the school's forensic photography degree program. (ECF Nos. 33, 35 at ¶4.) Other than her application to the Program, Ms. McKay did not apply to Barry College, other colleges with a program in forensic photography or any other programs like the County's Program because she did not want to attend "another four years of school." (ECF Nos. 33, 35 at ¶5-8.) When Ms. McKay began the Program, she did so with the understanding that it was free-of-charge, six-months long, unpaid, and required weekend work. (ECF Nos. 33, 35 at 17; *see also* ECF No. 32 at 5 (noting the program is free of charge).) She undertook the Program with the expectation of learning forensic photography and agrees that she did indeed learn forensic photography over the course of her internship. (ECF Nos. 33, 35 at ¶17-18.) In addition to learning about autopsy photography, Ms. McKay learned about other topics such as ultraviolet and infrared light and fingerprints on glass, among others. (ECF Nos. 38, 41 at

¶74, 77.) It is undisputed that Ms. McKay undertook the program knowing she would have no opportunity to earn academic credit through her participation and knew that her participation was not required as a condition to obtaining professional licensure or employment. (ECF Nos. 30, 38 at ¶6.) Moreover, it is undisputed that Ms. McKay's participation was motived *solely* to help her develop specialized photography skills and enhance her employability, and was not undertaken for any "civic, charitable or humanitarian reasons" or to benefit the County. (ECF Nos. 30, 38 at ¶7.) At no point was Ms. McKay promised a job at the end of her participation in the Program. (ECF Nos. 38, 41 at ¶57.)

When Ms. McKay began the Program, she had not used any of the equipment that was found in the County's photography lab, except for a camera. (ECF Nos. 33, 35 at ¶16.) In terms of the structure of the Program, at a high level, Ms. McKay and the County agree that during the first two weeks of her internship, Ms. McKay was given a binder of workbook assignments to complete and during the third and fourth weeks, she received training in the morgue where she shadowed the County's staff photographers as they took forensic autopsy photos. (ECF Nos. 30, 38 at ¶15-16.) During weeks five to eight, Ms. McKay and another intern worked together in the morgue taking autopsy photographs, sometimes with and without the supervision of County staff photographs. (ECF Nos. 30, 38 at ¶18-19.) After her eighth week in the program, Ms. McKay and the other Program intern would alternate the weeks they would work taking autopsy photographs in the morgue. (ECF Nos. 30, 38 at ¶20.) On off-weeks when Ms. McKay was not working in the morgue, she would complete assignments in the Program office. (ECF Nos. 30, 38 at ¶21.) Ms. McKay notes these assignments were educational and included instruction by staff photographers as well as equipment training. (ECF No. 1 at ¶17.) Over the course of her participation in the Program, Ms. McKay received some written feedback on her work but did not receive a formal evaluation, similar to what the County's staff photographers would prepare for an intern completing their internship through an educational institution, such as Barry College. (ECF Nos. 30, 38 at ¶32, 34-35.)

On February 12, 2020, Ms. McKay filed the instant suit against the County, seeking minimum wage and overtime payments under the Fair Labor Standards Act of 1938 ("FLSA") for her participation in the Program. (ECF No. 1.) In her motion for summary judgment, Ms. McKay claims that the County abuses the Program to "save labor costs" by providing training early in the program so they can require their interns to work "seven days in a row . . . performing exactly the same work that staff photographers would be performing if interns were not available." (ECF No. 31 at 2.) Ms. McKay also argues that she cannot be considered a "volunteer" that is exempt from the

FLSA's protections because she joined the County's Program to develop her skills and increase her employability and not for civic, charitable, or humanitarian purposes. (ECF No. 31 at 2.) Ms. McKay argues she was an employee of the County and must be paid minimum wage and overtime for her time as a Program intern.

In its own motion for summary judgment, the County argues that Ms. McKay was never a County employee as her internship was accepted without any promise or expectation of compensation or a job at its completion, provided similar training to what Ms. McKay would have received from a degree program, and her internship did not displace, but rather slowed, the work of paid staff photographers. (ECF No. 32 at 5.) In light of these facts, the County argues that Ms. McKay could not have been considered an employee of the County under the FLSA.

## II.  Legal Standard

### A. Summary Judgment

The Court applies the familiar legal standard for summary judgment motions. "Summary judgment is appropriate where the pleadings, affidavits, depositions, admissions, and the like show that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Urquilla-Diaz v. Kaplan Univ.*, 780 F.3d 1039, 1050 (11th Cir. 2015) (punctuation & citation omitted). "[T]o survive summary judgment, the nonmoving party must . . . make a showing sufficient to permit the jury to reasonably find on its behalf." *Id.*

### B. Fair Labor Standards Act

The FLSA, was enacted by Congress to "'aid the unprotected, unorganized and lowest paid of the nation's working population." *Schumann v. Collier Anesthesia, P.A.*, 803 F.3d 1199, 1207 (11th Cir. 2015) (quoting *Brooklyn Sav. Bank v. O'Neil*, 324 U.S. 697, 707 n.18 (1945)). In order to achieve this stated purpose, the FLSA requires employers pay employees a minimum wage and overtime. 29 U.S.C. §§ 206(a), 207(a). However, the protections of the FLSA only extend to individuals "falling within the Act's definition of 'employee'." *Id.* While Congress intended for the definition of "employee" to be "broad," the terms "employee" and "employer" cannot be interpreted so as to "'make a person whose work serves only his own interest an employee of another person who gives him aid and instruction.'" *Schumann*, 803 F.3d at 1208 (quoting *Walling v. Portland Terminal Co.*, 330 U.S. 148, 152 (1947)).

While the FLSA broadly defines employee as "any individual employed by an employer," the Act exempts from that definition "any individual who *volunteers* to perform services for a public agency which is a State, [or] a political subdivision of a State . . . if the individual receives no compensation . . . and such services are not the same type of services which the individual is employed to perform for such public agency." 29 U.S.C. § 203(4)(A) (emphasis added). While the FLSA itself does not define the term "volunteer," the Department of Labor, which is charged with enforcing the FLSA, has issued regulations and interpretive papers defining or applying the term.

Specifically, the Department of Labor has defined the term "volunteer" as meaning "[a]n individual who performs hours of service for a public agency for civic, charitable, or humanitarian reasons, without promise, expectation or receipt of compensation." 29 C.F.R. § 533.101(a). In a separate interpretive regulation also dealing with the definition of volunteer, the Department of Labor writes that "individuals who are not employed in any capacity by State or local governments often donate hours of service . . . for civic or humanitarian reasons" and notes that such individuals "are considered volunteers and not employees of such public agencies if their hours of service are provide with no promise, expectation, or receipt of compensation for the services rendered." 29 C.F.R. § 533.104(a). Finally, the Department of Labor has promulgated a fact sheet which reaffirms these general principles, adding that "[u]npaid internships for public sector . . . organizations, where the intern volunteers without expectation of compensation, are generally permissible." Wage & Hour Div., U.S. Dep't of Labor, *Fact Sheet #71: Internship Programs Under the Fair Labor Standards Act (Updated January 2018)*, n.1, https://www.dol.gov/sites/dolgov/files/WHD/legacy/files/whdfs71.pdf. The

To prevail on minimum wage and overtime claims, a Plaintiff must demonstrate: 1) that the defendant employed her; and 2) that she was employed by an enterprise engaged in commerce. *Vazquez v. Uooligan Gas Station Convenience Store Inc.,* No. 2:18-cv-611-FtM-38NPM, 2020 WL 321151, at *2 (M.D. Fla. May 22, 2020). As the FLSA regulations make clear that public agencies are engaged in commerce, the main question before the Court is whether Ms. McKay was an employee under the FLSA. *See* 29 C.F.R. § 553.3(b) ("Certain definitions already in the Act were modified by the 1974 Amendments. . . . The term 'enterprise engaged in commerce or in the production of goods for commerce' . . . was expanded to include public

agencies."). Ultimately, whether an individual is an employee under the FLSA is a question of law. *Schumann*, 803 F.3d at 1207.

### III. Analysis

The question presented to the Court for resolution on the parties' cross motions for summary judgment is as follows: as a matter of law, under the FLSA, is an individual who voluntarily and knowingly enters into a free, unpaid internship program without the promise of a job thereafter, for purely selfish reasons, i.e. not for civic, charitable, or humanitarian reasons, for a political subdivision of a State, an "employee" under the FLSA and therefore entitled to minimum wage and overtime protections? Based on the law, applicable regulations, and additional interpretive guidance provided by the Department of Labor, the Court finds that such an individual is not an employee under the FLSA and therefore not entitled to minimum wage or overtime protections.

#### A. Regulations

The Plaintiff urges this Court to defer to 29 C.F.R. § 553.101 (ECF No. 31 at 6-7), which provides that an "individual who performs hours of service . . . for civic, charitable, or humanitarian reasons, without promise, expectation or receipt of compensation . . . is considered to be a volunteer during such hours" and therefore exempt from the FLSA. The Plaintiff argues that because she participated in the County's Program for purely selfish reasons, to develop forensic photography skills and increase her employability, she cannot be considered a volunteer under the Department of Labor's regulations.

Having considered the Plaintiff's arguments, the Court is not convinced that the regulation the Plaintiff points the Court to deals squarely with the issues presented in this case. Rather, the Court finds it necessary to read 29 C.F.R. § 553.101, which deals with the definition of volunteers generally, alongside 29 C.F.R. § 553.104, which deals with private individuals who volunteer to serve public agencies. This latter regulation provides that "individuals who are not employed in any capacity by State or local government agencies *often* donate hours of service to a public agency for civic or humanitarian reasons"  and notes when such individuals undertake such service with "no promise, expectation, or receipt of compensation" they are considered volunteers. 29 C.F.R. § 553.104 (emphasis added). The regulation goes on to state that there are "no limitations or restrictions imposed by the FLSA on the types of services which private individuals may volunteer to perform for public agencies." *Id.* Unlike 29 C.F.R. § 553.101, § 553.104 does not appear to predicate a finding of volunteer status on an individual's civic-mindedness and therefore the regulations seem to be in a degree of tension.

While 29 C.F.R.  553.101 appears to require an individual have a civic, charitable, or humanitarian purpose, 29 C.F.R. § 553.104 seems to not require such a conclusion.

One court to consider this question acknowledged this tension, writing that a literal reading of 29 C.F.R. § 553.1010 would lead to "obviously absurd result[s]" that could not have been intended by Congress and the Department of Labor. *Todaro v. Twp. Of Union,* 40 F. Supp. 2d 226, 230 (D.N.J. 1999). To illustrate its point the court used the example of a judicial intern who works for a judge purely to bolster his resume and increase his professional prospects. *Id.* The court noted classifying such an individual as an employee rather than a volunteer under the FLSA would "offend[] rationality." *Id.* Rather, the court said that the definition of volunteer "must be applied in a common-sense way that takes into account the totality of the circumstances surrounding the relationship." *Id.* In an attempt to reconcile 29 C.F.R. 553.101 with 29 C.F.R. § 553.104, the court noted its belief that the two regulations, taken together, require a finding that an individual be motivated at least in part by a civic-minded purpose in pursuing their internship. *Id.* Taking its example of the judicial intern, the court noted that an internship motivated purely by professional aspirations cannot take an internship out of the common-sense idea of what constitutes volunteer services. *Id.*

This Court agrees in principle with the *Todaro* court's result and further agrees that a common-sense view of the term volunteer would necessitate a finding that Ms. McKay, like the judicial intern, is a volunteer under the FLSA. Indeed, this seems consistent with a January 2018 Department of Labor fact sheet which notes that "[u]npaid internships for public sector . . . organizations, where the intern volunteers without expectation of compensation, are generally permissible." Wage & Hour Div., U.S. Dep't of Labor, *Fact Sheet #71: Internship Programs Under the Fair Labor Standards Act (Updated January 2018)*, n.1, https://www.dol.gov/sites/dolgov/files/WHD/legacy/files/whdfs71.pdf. However, the Court's ultimate holding does not rest on the Department of Labor's regulations or *Todaro,* as the Court prefers another court's approach to this issue. *See Lucia Vlad-Berindan v. NYC Metro. Trans. Auth.*, 14-cv-10304 (VEC) (FM), 2016 WL 1317700 (S.D.N.Y. April 1, 2016). That court concluded that a better way to judge whether public sector interns are employees under the FLSA is to apply the primary beneficiary test that courts otherwise use to judge private sector internships. *Lucia Vlad-Berindan* 2016 WL 1317700, at *8. In taking this approach, the court said that finding only public sector "volunteers" are exempt from the FLSA would be "an extreme decision, and one that could throw into disarray many public sector internship programs." *Id.*

This Court agrees and accordingly its decision therefore hinges not on the Department of Labor's regulations, which seem to be in tension, but on the primary beneficiary test which the Court finds should be applied to public sector interns who do not otherwise fit the definition of volunteer.

### B. Primary Beneficiary Test

The primary beneficiary test, espoused by the Second Circuit in *Glatt v. Fox Searchlight Pictures, Inc.*, 811 F.3d 528, 536-37 (2d Cir. 2016),[1] and adopted by the Eleventh Circuit in *Schumann v. Collier Anesthesia, P.A.* assists courts in making the sometimes difficult determination of just who is an employee under the FLSA. *Schumann*, 803 F.3d at 1207, 1211-12. The test serves three salient purposes: (1) it focuses on what an intern receives in exchange for their work; (2) it allows courts flexibility to look at the true economic reality of the relationship; and (3) it acknowledges the intern/employer relationship must be looked at differently from the employee/employer relationship because an internship necessarily has educational or vocational benefits. *Glatt*, 811 F.3d at 536. The test also reflects the fact that when reviewing FLSA cases involving "trainees," courts, for the most part, have "concentrated on evaluating the 'primary beneficiary' of the training . . . program to determine whether participants constituted 'employees' . . . concluding that such an approach reveals the 'economic reality' of the situation." *Id.* at 1209-10. Consistent with the *Lucia Vlad-Berindan* court, this Court finds no compelling reason as to why the *Glatt/Schumann* test cannot be applied to determine if a public sector intern is an employee under the FLSA. Indeed, the primary beneficiary test seems to effectuate the spirit of the FLSA as it ensures that public sector employers are not "abus[ing] minimum wage or overtime requirements" to pressure or coerce "individuals to volunteer their services." 29 C.F.R. 553.101.

In the Eleventh Circuit, the primary beneficiary test, requires a balancing of "a non-exhaustive set of considerations," including: (1) the extent to which the intern and employer clearly understand that there is no expectation of compensation; (2) the extent to which the internship provides training that would be similar to that which would be given in an educational environment; (3) the extent to which the internship's duration is limited to the period in which the internship provides the intern with beneficial learning; (4) the extent to which the intern's work complements, rather than displaces, the work of paid employees while providing significant educational benefits to the intern;

---

[1] *Glatt* was originally decided on July 2, 2015, before the Eleventh Circuit's opinion was issued in *Schumann* on September 11, 2015. The *Glatt* opinion was amended on January 25, 2016, and the prior opinion cited to by the Eleventh Circuit was withdrawn. The Court cites to the amended *Glatt* opinion in its order.

and (5) the extent to which the intern and the employer understand the internship is conducted without entitlement to a paid job at the conclusion of the internship. *Id.* at 1211-12 (discussing *Glatt*, 811 F.3d at 536-37). No one factor is dispositive, and every factor need not point in the same direction for the court to conclude that the intern is not an employee. *Id.* at 1212. The test is not concrete, but rather, requires the Court to consider the totality of the circumstances of the relationship. *Id.* at 1210.

Turning to the primary beneficiary test factors, it is clear the first factor, understanding as to compensation, weighs in favor of the County. It is undisputed that Ms. McKay and the County understood that her participation in the Program would be uncompensated. Indeed, the Parties agree that when Ms. McKay began the Program, she did so with the understanding that it was free for her and unpaid. (ECF Nos. 33, 35 at 17.)

The second factor, the extent to which the internship provides training that would be similar to training Ms. McKay might have received in an educational environment also weighs in favor of the County. It is undisputed that Ms. McKay learned of the Program when visiting Barry College. Her purpose in visiting Barry College was to learn more about the school's forensic photography degree program. After learning of the program, Ms. McKay did not apply to Barry College, or even explore other colleges or any other programs like the County's Program because she did not want to attend "another four years of school." (ECF Nos. 33, 35 at ¶5-8.) The Court finds persuasive that the County's program provides, free-of-charge, a significant opportunity for individuals interested in forensic photography to obtain expertise in that area without having to expend potentially thousands of dollars and years of time on a collegiate program. Moreover, the Program, under the guidance of the County's staff photographers, provides the County's interns with an invaluable opportunity to expand and develop their professional network before beginning their careers in forensic photography or in a similar field. With all of this considered, it is clear the program imparted significant benefit to Ms. McKay. Ms. McKay voluntarily chose to undertake this free Program and decided not to pursue her forensic autopsy photography education elsewhere. The Court therefore finds this factor weighs heavily in favor of the County.

The third factor, the extent to which the internship's duration is of appropriate length, weighs very weakly, if at all, in favor of Ms. McKay. The Eleventh Circuit explained that the duration of an internship "is not an exact science" that will not always "match up perfectly with the skills to be taught and the experience to be gained through the program." *Schumann*, 803 F.3d at 1213. An internship that is longer than "absolutely necessary" to teach necessary skills does not mean an intern is an employee under the FLSA, but

rather, the court must consider whether the duration of the internship is "grossly excessive" in comparison to the period of beneficial learning. *Id.* at 1212-14. The Parties agree that the first week of Ms. McKay's internship involved extensive training in forensic photography. (ECF Nos. 30, 38 at ¶15-16.) The Parties also agree that Ms. McKay learned additional techniques, including UV/IR light and fingerprints on glass, among others, but disagree as to how much time it took for the County's staff photographers to train Ms. McKay as "training time varies depending on how needy the intern is." (ECF Nos. 38, 41 at ¶74-77.) The Plaintiff also acknowledges that on "assignment weeks" she would receive instruction on topics other than autopsy photography meaning she received training throughout the duration of the Program. (ECF No. 31 at 13.) Even if Ms. McKay was less "needy" than other interns and required less instruction time, that does not mean that the County's Program is "grossly excessive" in terms of length.

The fourth factor, the extent to which the intern's work displaces or disrupts the work of other employees, weighs weakly in favor of Ms. McKay. While the County contends that having interns slows the work of the County's staff photographers, the Plaintiff points out that the County has not conducted an analysis to determine if that is in fact the case. (ECF No. 35 at ¶24.) The Plaintiff instead argues that it is possible that the benefit interns provide to the County outweighs time spent by staff photographers training those interns. While this may be the case, the Eleventh Circuit has noted that "there is nothing inherently wrong with an employer's benefiting from an internship that also plainly benefits the interns." *Schumann*, 803 at 1211. The Court has already found that Ms. McKay received significant benefits from participating in the Program. That the relationship between the County and its interns may be mutually beneficial is not of much consequence to the Court's analysis as to whether or not Ms. McKay was a County employee.

The final factor, understanding as to employment at the end of the internship, weights in favor of the County. Neither party contends that Ms. McKay expected a paid job with the County at the end of her internship. (ECF Nos. 32 at 5; ECF No. 36.)

While some of the above factors weigh weakly in favor of Ms. McKay, the majority of applicable factors weigh in favor of the County. Indeed, any factors weighing in favor of Ms. McKay are outweighed by the clear "economic reality" of the relationship between the County and Ms. McKay: that Ms. McKay's free internship allowed her to develop skills in forensic photography over a short period of time, imparting a significant benefit to her. Consequently, under the primary beneficiary test, the Court therefore concludes that Ms. McKay cannot

be considered an employee entitled to minimum wage and overtime protections under the FLSA.

## IV. Conclusion

For the reasons stated above the Court **denies** Ms. McKay's motion for summary judgment (**ECF No. 31**) and **grants** the County's motion for summary judgment (**ECF No. 32**). The Clerk is directed to **close** this case. All pending motions, if any, are **denied** as moot.

**Done and ordered** in chambers in Miami, Florida on October 13, 2020.

Robert N. Scola, Jr.
United States District Judge